UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIM LANDERS,

      Petitioner,

                                      Civil Action No. 06-CV-11106

v.

                                        HON. BERNARD A. FRIEDMAN

KEN ROMANOWSKI,

      Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter is presently before the Court on petitioner's amended application for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his state convictions for first-degree (premeditated) murder, Mich. Comp. Laws § 750.316(1)(a), conspiracy to commit first-degree murder, Mich. Comp. Laws §§ 750.157a and 750.316, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. Petitioner raises several evidentiary and constitutional issues in his habeas petition. He also alleges that the combined effect of the errors deprived him of due process and a fair trial. Respondent argues through counsel that some of petitioner's claims are procedurally defaulted and that none of the claims merit habeas relief. Having reviewed the record, the Court agrees that petitioner's claims lack merit and that the state-court rulings on his claims were objectively reasonable. Accordingly, the amended petition will be denied.

**I. Background**

    **A. The Trial, Sentence, and Direct Appeal**

Petitioner was charged in Wayne County, Michigan, with two counts of premeditated murder as a principal or aider and abettor, two counts of conspiracy to commit first-degree murder, and one count of felony firearm. The charges arose from the fatal shootings of Kevin Garland and Garland's friend, Mary Ann Simmons. Garland was shot and killed in Southfield, Michigan, about 12:15 a.m. on October 16, 1998. Simmons was shot and killed in a similar fashion about three hours later at her home in Detroit, Michigan.

Petitioner's first trial ended with a mistrial because the jury was unable to reach a unanimous verdict. Petitioner was tried a second time with co-defendant Christine Jackson before a single jury. The evidence at the second trial established that,

> [o]n October 7, 1998, . . . Landers . . . agreed to sell three kilograms of cocaine to Michael McConico. Rather than purchase the drugs, McConico robbed Landers and shot him in the leg. Landers blamed [Kevin] Garland for this incident because Garland introduced McConico to him, and Landers sought revenge. Landers, accompanied by [Christine] Jackson, Eric Willis, and Ronney Johnson, tracked down and killed Garland and then Garland's girlfriend, [Mary Ann] Simmons. After these murders, Landers, Jackson, Willis, and Johnson left Michigan and drove to California. Facing the need to move some furniture in Michigan, Jackson and Johnson returned to Michigan in November 1998 and while there, police pulled over Johnson's van and found a concealed weapon. Johnson was charged with carrying a concealed weapon, but the prosecutor later dropped the charges in exchange for Johnson's testimony at Jackson's and Landers'[] homicide trial.
>
> At trial, among the prosecution's witnesses were Johnson, McConico, and Angela Wallace. Johnson provided eyewitness testimony of Garland's shooting as well as Landers'[] order to Willis and Jackson to "take care" of Simmons. McConico testified as to the motive, admitting that he robbed and shot Landers in the leg. Wallace, a California attorney, testified as to her role in representing

2

Johnson on his concealed-weapon charge.

*Jackson v. Stovall*, 467 F. App'x 440, 440-41 (6th Cir.), *cert. denied*, 133 S. Ct. 316 (2012).[1]

Ronney Johnson was the main witness against petitioner. He testified that, after petitioner had surgery on his wounded leg and was released from the hospital, petitioner and others attempted to locate Mike McConico because petitioner wanted revenge for being shot and having his cocaine stolen. Johnson explained that, on the night in question, he, petitioner, Christine Jackson, and Eric Wills[2] picked up Kevin Garland in their van and demanded to know where Mike McConico lived. Garland gave them directions to a large apartment complex, but when they reached the housing complex, Garland exited the van and started running. Although petitioner had been released from the hospital within the past 24 hours, he slid out of his seat in the van and fired several gunshots at Garland through the window of the van.

According to Johnson, petitioner subsequently told Eric Wills to "make sure the job [was] finished." Wills then went to the apartment building where Garland had gone and fired a few shots.

The group subsequently left the complex and went to a motel where petitioner asked Ronney Johnson to go and take care of Mary Ann Simmons. Johnson replied that it was not his war. Petitioner then made the same request of Eric Wills, who left the motel with Jackson. When Wills and Jackson returned to the motel, Wills informed petitioner that he had handled the matter, and Simmons stated that she saw Wills go to the door and take care of business. The next day, the

---

[1] This is an excerpt from the Sixth Circuit's decision in Christine Jackson's appeal from the denial of her federal habeas corpus petition.

[2] Although the Sixth Circuit refers to this witness as "Willis" in its opinion in Christine Jackson's habeas case, the transcript of trial indicates that the witness's surname is "Wills."

3

shootings were in the news and either petitioner or Jackson said that they had to get out of there. Immediately afterward, they left the state.

Johnson explained at trial that, initially, he did not tell the police about the shootings. However, after his arrest on the weapons charge, he implicated petitioner in the murders because he wanted protection for his family and because he thought that the defendants had mistreated him. He provided the police with information about the shootings before he was promised leniency for his cooperation, but he did not tell the complete truth because petitioner, Jackson, and Wills were not in custody at the time, and he feared them.

Neither petitioner nor Jackson testified at trial. Petitioner's only witness was Dr. David Schleif, the emergency physician who treated petitioner for his gunshot wound on October 7, 1998. Dr. Schleif testified that, although petitioner's surgery would not have prevented him from placing weight on both legs after his discharge from the hospital, it would have been dangerous and painful to do so, and the weight could have displaced the rod that was inserted in petitioner's leg. In Dr. Schleif's opinion, petitioner's injury would have precluded any motion or weight-bearing on the day after his discharge.

Petitioner's defense was that Ronney Johnson was not a credible witness, that Johnson was responsible for the shootings, that petitioner had no motive for shooting Kevin Garland, and that the acts attributed to petitioner were physically impossible due to his leg injury and recent surgery.

The trial court instructed the jury on second-degree murder as a lesser-included offense of first-degree murder, but, on April 20, 2001, the jury found petitioner guilty, as charged, of two counts of first-degree murder, two counts of conspiracy to commit first-degree murder, and

one count of felony firearm.  The trial court sentenced petitioner to two years in prison for the felony firearm conviction, followed by four concurrent terms of life imprisonment for the murder and conspiracy convictions.

In an appeal as of right, petitioner argued that (1) the trial court deprived him of due process and a fair trial by refusing to sever his trial from his co-defendant's trial, (2) the prosecutor committed misconduct, and (3) the trial court violated his right of confrontation by suppressing evidence of Ronney Johnson's character.  The Michigan Court of Appeals affirmed petitioner's conviction in an unpublished, *per curiam* opinion.  *See People v. Landers*, No. 235919, 2004 WL 1089500 (Mich. Ct. App. May 13, 2004).  Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the issues.  *See People v. Landers*, 471 Mich. 949; 690 N.W.2d 111 (2004) (table).

### B.  The Habeas Petition, Post-Conviction Proceedings, and Amended Petition

On March 15, 2006, petitioner commenced this action by filing a petition for a writ of  habeas corpus.  A month later, he moved to stay the federal proceedings so that he could pursue additional remedies in state court.  On May 10, 2006, the Court granted petitioner's motion and closed this case for administrative purposes.  *See* Order Granting Motion to Stay, docket entry 4.

On July 6, 2006, petitioner filed a motion for relief from judgment in the state trial court.  He argued that the trial court erred by (1) admitting in evidence a video transcript of Ronney Johnson's arraignment, (2) permitting the prosecutor to read Angela Wallace's prior testimony, (3) refusing to admit impeachment evidence offered by the defendant, (4) admitting hearsay testimony, and (5) allowing Kelvin Garland to testify as to what his brother Kevin told him.  Petitioner also argued that the prosecutor committed perjury and a fraud on the court and that trial counsel was

ineffective. The trial court rejected all these claims on the merits and denied petitioner's motion. Petitioner appealed the trial court's decision without success. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal on the basis that petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Landers*, No. 280800 (Mich. Ct. App. Apr. 16, 2008); *People v. Landers*, 482 Mich. 1031; 769 N.W.2d 200 (2008) (table).

On December 2, 2008, petitioner filed an amended petition for a writ of habeas corpus in this Court. The amended petition asserts the following grounds for relief: (1) the trial court deprived him of his constitutional rights by refusing to sever his trial from his co-defendant's trial; (2) the prosecutor engaged in misconduct; (3) the trial court suppressed evidence relating to Johnson's character for untruthfulness; (4) the trial court erred in admitting the transcript of Johnson's arraignment; (5) the trial court erred by allowing the prosecutor to read Wallace's prior testimony to the jury; (6) the trial court violated his rights by refusing to admit impeachment evidence offered by the defendants; (7) the trial court erred by admitting hearsay testimony; (8) the prosecutor committed perjury; (9) trial counsel was ineffective; (10) the combined effect of errors deprived him of due process and a fair trial; (11) the trial court violated his right of confrontation by allowing Kelvin Garland to testify about what the deceased victims said to him; and (12) there is newly discovered evidence that the prosecutor committed a fraud on the state court.

The Court initially failed to notice that petitioner was attempting to re-open his case. On March 15, 2012, however, the Court re-opened this case, and on September 14, 2012, respondent filed his answer to the amended petition.

## II. Standard of Review

6

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."

7

*Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.  "If a state court has not decided a particular claim on the merits, and if that claim is not procedurally defaulted, AEDPA deference does not apply, and 'this court [will] review[ ] questions of law and mixed questions of law and fact de novo.' "  *Scott v. Houk*, 760 F.3d 497, 504 (6th Cir. 2014) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Analysis

### A. Angela Wallace's Prior Testimony
(habeas claims I, V, and VII.B.1)

#### 1. Background

Petitioner alleges that the trial court deprived him of a fair trial and his right to confront the witnesses against him by refusing to sever his case from Christine Jackson's case when the trial court ruled that Angela Wallace's prior testimony could be read to the jury.  Petitioner further alleges that Ms. Wallace's prior testimony was inadmissible hearsay.

During petitioner's trial, the prosecutor asked Wallace when she first met Christine Jackson.  Wallace responded that she did not meet Jackson until February of 1999, which was after Ronney Johnson's nephew informed her that Johnson had been arrested in Detroit on a gun charge.

8

Wallace explained that she arranged for a local attorney (Clarence Tucker) to represent Johnson and that she subsequently represented Jackson in the early stages of Jackson's homicide case. Wallace saw no conflict of interest in representing both Jackson and Johnson because they were charged in separate cases and because she represented Johnson months before she represented Jackson. She claimed that she did not personally talk with Johnson, that her representation of him had nothing to do with Jackson, and that Jackson never asked her to represent Johnson. (Trial Tr. Vol. IV, 109-33, Apr. 12, 2001.)

The trial court released Wallace as a witness and permitted her to return to her home in California after she testified. The following day the prosecutor asked the trial court for permission to add a federal law enforcement official to his witness list. The prosecutor explained that, after Wallace testified, he contacted an assistant United States attorney in the Northern District of California where Christine Jackson had been indicted on a federal drug charge. The prosecutor learned during his conversation with the federal attorney that Wallace had testified in the California case that she knew Jackson as early as March of 1998. The prosecutor wanted to bring in the federal law enforcement official in the California case to testify that Wallace became acquainted with Jackson in 1998. The prosecutor also wanted to admit in evidence a transcript of the California hearing. (Trial Tr. Vol. V, 28, Apr. 13, 2001.)

Petitioner's attorney objected to the prosecutor's motion on the ground that the prosecutor was trying to impeach Wallace with her prior testimony, but without having confronted her with the testimony. The trial court ruled that the prosecutor could add the federal law enforcement official to his witness list to testify about Wallace's prior testimony and that the prosecutor could bring Wallace back to Michigan to testify if he paid for her transportation. (*Id*. at

9

28-32, 54-59.)

On the next day of trial, which was after a weekend recess in the case, the prosecutor reported that he had contacted Wallace and advised her that she must return to Michigan and that he would be providing her with a travel itinerary within 24 hours. The prosecutor stated that Wallace agreed to return to Detroit to testify, but when he tried calling her a second time with details of the travel arrangements, he reached her sister. The sister informed him that Wallace had gone to visit her father in Texas and that she did not know the Texas address or telephone number for Wallace or even the city where she was staying. Additionally, Wallace's cell phone had been turned off. (Trial Tr. Vol. VI, 6-8, Apr. 16, 2001.)

Because Wallace could not be located, the prosecutor asked the trial court for permission to use the transcript of her testimony in the California hearing. He wanted to show that, contrary to her trial testimony, Wallace knew Christine Jackson as a client in March of 1998. The prosecutor speculated that Jackson had tried to hire Wallace to represent Ronney Johnson in Johnson's criminal case for carrying a concealed weapon to control what Johnson said to the police about the murders of Kevin Garland and Mary Ann Simmons.

The trial court ruled that the transcript of Wallace's testimony in the California case was not hearsay and that it could be read to the jury as impeachment evidence in Jackson's case, but that the transcript itself could not be admitted as a exhibit. Defense counsel objected to the admission of the evidence and requested "a severance of this additional evidence." The trial court denied defense counsel's request (Trial Tr. Vol VII, 7-21, 235, Apr. 17, 2001), but read a limiting instruction to the jurors before the transcript was read to them (Trial Tr. Vol. VIII, 23-25, Apr. 18, 2001).

### 2.  The State Court Decision

Petitioner claims that Wallace's prior testimony was inadmissible hearsay and that use of the prior testimony violated his right to confront Wallace.  He argues that Wallace's testimony from the California proceeding prejudiced him because it suggested that Wallace was testifying falsely to assist Christine Jackson, who supposedly attempted to control Ronney Johnson's testimony.  According to petitioner, the evidence implicated him in Jackson's scheme because he was charged with conspiring and aiding and abetting Jackson in the charged offenses.  Petitioner maintains that Wallace's prior testimony established Jackson as a schemer and deceiver in the jury's eyes, as opposed to Johnson, whom petitioner had been attempting to portray as the guilty party.

Petitioner raised his claim on direct appeal from his convictions.  Although the Michigan Court of Appeals stated that the disputed evidence was "somewhat prejudicial," the Court of Appeals considered the nature of the impeachment evidence, the trial court's limiting instruction, and the fact that defense counsel did not request a severance until mid-trial.  The Court of Appeals concluded that the trial court did not violate petitioner's rights under the Confrontation Clause, nor abuse its discretion by denying petitioner's motion for a separate trial. The Court of Appeals reasoned that, because the evidence was not presented against petitioner, petitioner "was not denied his Sixth Amendment guarantee 'to be confronted with the witnesses *against him*.' " *Landers*, 2004 WL 1089500, at *2 n.3 (emphasis in original).

### 3.  Severance

Severance is governed by state law, *see Hutchinson v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002), and in Michigan "[t]he decision to sever or join defendants lies within the discretion of the trial court."  *People v. Hana*, 447 Mich. 325, 331; 524 N.W.2d 682, 684 (1994).  Severance is

required when "necessary to avoid prejudice to substantial rights of the defendant." Mich. Ct. R. 6.121(C). In *Hana*, the Michigan Supreme Court interpreted this language to mean that "severance is mandated . . . only when a defendant demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Hana*, 447 Mich. at 331; 524 N.W.2d at 684. " 'Incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice,' " *id*., 447 Mich. at 349; 524 N.W.2d at 692 (quoting *United States v. Yefsky*, 994 F.2d 885, 896 (1st Cir. 1993)), and the risk of prejudice may be allayed by proper instructions. *Id*., 447 Mich. at 351, 524 N.W.2d at 692-93.

Both petitioner and co-defendant Christine Jackson were charged with two counts of first-degree murder and two counts of conspiracy to commit first-degree murder. Their trial was a lengthy one involving multiple witnesses, and they had a common defense that Ronney Johnson was lying about what happened. Although neither defendant testified, petitioner was not precluded from presenting exculpatory evidence. These factors weighed in favor of proceeding with a joint trial and denying defense counsel's motion for severance.

Petitioner nevertheless contends that, because he was charged with conspiracy and with aiding and abetting Jackson, the prosecutor's suggestion that Jackson had tried to prevent Ronney Johnson from implicating her in the murders also prejudiced him. Petitioner asserts that, if he had been tried separately, the jury would not have heard Wallace's testimony or the prosecutor's argument that Wallace's testimony was some of "the most damning testimony" of the trial. (Trial Tr. Vol. VIII, 198, Apr. 18, 2001.)

The trial court, however, read the following cautionary instruction to the jury before Wallace's prior testimony was read to the jury:

> [T]his testimony can only be considered in judging the credibility of the witness Angela Wallace. It cannot be used for any other purpose, that is, it cannot be used as proof of any of the facts stated in that transcript.  Again, it can only be used to judge the credibility of the witness Angela Wallace and for no other purpose.
>
> In addition, this evidence comes in only with respect to the Defendant, Christine Jackson.  It only can be considered in terms of her case in judging the credibility of Angela Wallace. It cannot be used for any other purpose.  Again, I'll repeat, it cannot be used as facts of any of the statements that are contained within the transcript.

(*Id*. at 23-24.)

At the close of the case, the trial court repeated that Angela Wallace's statement could only be considered for impeachment and not as proof of the facts in the statement.  (Trial Tr. Vol. IX, 14, Apr. 19, 2001.)  The trial court also said:

> The fact that [the defendants] are on trial together is not evidence that they were associated with each other or that either one is guilty.  You should consider each Defendant separately.  Each is entitled to have this case decided on the evidence and the law that applies to him or her.  If any evidence was limited to one Defendant, you should not consider it as to any other Defendant.
>
> . . . .
>
> Each Defendant in this case is entitled to have his or her guilt or innocence decided individually.

(*Id*. at 11, 24.)

"[J]uries are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200,  211 (1987), and in a joint trial "[j]uries are presumed to be capable of following instructions . . . regarding the sorting of evidence and the separate consideration of multiple defendants."  *U.S. v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002).   The Court therefore concludes that petitioner's right to due process and a fair trial was not violated by the trial court's denial of his motion for severance.

13

### 4. Confrontation

The remaining questions are whether Angela Wallace's prior testimony was inadmissible hearsay and whether the prior testimony violated petitioner's rights under the Confrontation Clause.  The Constitution guarantees an accused the right "to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  This clause "does not necessarily prohibit the admission of hearsay statements against a criminal defendant." *Idaho v. Wright*, 497 U.S. 805, 813 (1990).  Rather, the right requires that testimonial statements of individuals who are absent from trial may be admitted only when the declarant is unavailable and the defendant had a prior opportunity to cross-examine him or her.  *Crawford v. Washington*, 541 U.S. 36, 59, 68 (2004).  Stated differently, the Confrontation Clause "contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." *Giles v. California*, 554 U.S. 353, 358 (2008) .

"Testimonial" evidence applies, at a minimum, "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  *Crawford* , 541 U.S. at 68.  The Confrontation Clause does not bar the use of nontestimonial statements, *see id*., or testimonial statements used for purposes other than establishing the truth of the matter asserted. *Id.* at 59 n.9.

Petitioner did not have an opportunity to cross-examine Wallace at the California hearing, and even though she subsequently testified at petitioner's trial she became unavailable when the prosecutor tried to re-call her.  Nevertheless, the trial court instructed the jury to consider

14

Wallace's California testimony only as impeachment evidence in Jackson's case.  The Michigan Court of Appeals therefore concluded that petitioner was not denied his Sixth Amendment right to be confronted with the witnesses against him.  The Court of Appeals for the Sixth Circuit reached the same conclusion in Jackson's federal habeas case, stating that

> [a]ll relevant evidence suggests that the evidence was not admitted substantively:  the prosecutor introduced it exclusively as a prior inconsistent statement to reflect on Wallace's credibility; the trial court expressly limited its purpose to impeachment; and the trial court provided a clear limiting instruction to the jury, prohibiting it from considering the statement as substantive evidence.

*Jackson*, 467 F. App'x at 444.  The Sixth Circuit concluded in Jackson's case that the state court's determination – that Wallace's statement was admitted solely for impeachment purposes – was objectively reasonable.  The same conclusion applies here.  Thus, petitioner's right to confront the witnesses against him was not violated by the admission of Wallace's prior testimony.

Petitioner's hearsay claim fails for similar reasons.  " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Mich. R. Evid. 801(c).  Pursuant to the trial court's instruction, Angela Wallace's prior testimony was not offered as substantive evidence to show that Wallace actually met Christine Jackson in October of 1998.  Instead, the testimony was used to impeach Wallace's trial testimony that she met Jackson after Wallace was contacted about representing Johnson.  Furthermore, the prior testimony was admitted only in Christine Jackson's case.  Because the prior testimony was not offered against petitioner to prove the truth of the matter asserted, it was not hearsay.

## B.  The Prosecutor's Conduct
(habeas claims II, VIII, and XII)

15

Petitioner asserts that the prosecutor engaged in various acts of misconduct, which deprived him of a fair trial. The Michigan Court of Appeals reviewed portions of petitioner's prosecutorial misconduct claim for "plain error" because petitioner did not object to the claimed errors at trial. The Court of Appeals concluded that there was no merit in petitioner's claims and that plain error did not exist. Although respondent argues that the subclaims which the state court reviewed for "plain error" are procedurally defaulted, a procedural default "is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The Court will proceed to the merits of petitioner's claims because a determination of whether petitioner's prosecutorial misconduct claims are procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

### 1. Clearly Established Federal Law

Prosecutors "may strike hard blows," but they are "not at liberty to strike foul ones. It is as much [their] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. U.S.*, 295 U.S. 78, 88 (1935). Nevertheless, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

> [I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "To constitute a denial of due process, the

16

misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

### 2. Failure to Obtain Wallace's Prior Testimony

Petitioner alleges that the prosecutor knew of Wallace's testimony in the California hearing before Wallace testified at his trial in Michigan and that the prosecutor suppressed the evidence. Petitioner also contends that the prosecutor committed perjury and a fraud on the trial court when he denied having the evidence before trial and claimed that he had no succinct answer to the trial court's question about why he did not acquire the transcript of Wallace's prior testimony before petitioner's trial. Neither the Michigan Court of Appeals nor the state trial court found any merit in petitioner's claim.

A prosecutor may not suppress "evidence favorable to an accused," *Brady v. U.S.*, 373 U.S. 83, 87 (1963), nor deceive a court and jurors by presenting false evidence. *Giglio v. U.S.*, 405 U.S. 150, 153 (1972). Here, however, the evidence does not support petitioner's claim that the prosecutor was aware of Wallace's prior testimony before petitioner's trial. The prosecutor claimed at trial that he was not aware of the prior testimony until after Wallace testified at petitioner's trial and left Michigan. The trial court then asked the prosecutor what prompted him to call the assistant United States attorney in California. The prosecutor responded that he was aware of Jackson's indictment on a drug charge in California and had called the federal attorney on that case to determine whether Wallace actually testified there. The prosecutor admitted that he did not have "a succinct answer" as to why he waited until after Wallace testified in petitioner's case to call the federal attorney. He explained, however, that Wallace had surprised him when she testified at trial

17

that she did not know Jackson before she represented Ronney Johnson and that her representation

of both individuals was coincidental.  The prosecutor denied having an independent basis for

believing that Wallace would testify that Jackson had approached her to retain Johnson.  He stated

that he had never discussed the matter with Wallace because he did not want to alert her to what he

would be asking her at trial.  (Trial. Tr. Vol. VI, 14-16, Apr. 16, 2001.)

   The trial court opined that the prosecutor could not have anticipated Wallace's trial

testimony, because he believed Wallace would acknowledge her relationship to Jackson.  The trial

court concluded that it would be unreasonable to charge the prosecutor with knowledge that the

United States attorney in California would have testimony tying Angela Wallace to Christine

Jackson in 1998.  (*Id*. at 16-17.)

   On direct appeal of this issue, the Michigan Court of Appeals agreed with the trial

court that

> [t]here is nothing in the record to suggest that the prosecutor knew
> beforehand that Wallace would give inconsistent testimony at
> [petitioner's] trial, that the prosecutor was aware of Wallace's earlier
> contradictory testimony at the time Wallace testified, or that the
> prosecutor deliberately withheld any evidence.

*Landers*, 2004 WL 1089500, at *2.

   Petitioner points out that at a post-conviction hearing in Christine Jackson's case, the

prosecutor testified that he *did* have a transcript of Wallace's prior testimony before petitioner's

trial.  (Hr'g Tr., 176, Sept. 12, 2003), docket entry 13-25.  The prosecutor, however, subsequently

corrected himself and testified that he did *not* have the transcript before trial.  (*Id*. at 176-77, 181-

83.)  Thus, there is no merit in petitioner's claim that the prosecutor suppressed evidence, engaged

in perjury, or committed a fraud on the trial court.

18

### 3.  Denigrating the Defense

Petitioner contends that the prosecutor denigrated the defense attorneys in his closing arguments by:  (a) suggesting that the defense attorneys had made a generic argument about the prosecution conducting a sloppy investigation (Trial Tr. Vol. VIII, 187, Apr. 18, 2001); (b) stating that petitioner's attorney was the only person on the planet to speculate that Ronney Johnson killed Kevin Garland (*id*. at 189); and (c) accusing defense counsel of increasing the prosecution's burden of proof by questioning why a DNA analysis was not done on sunglasses found where Kevin Garland was murdered (*id*. at 193).

Prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *U.S. v. Young*, 470 U.S. 1, 9 (1985), but they "may highlight inconsistencies or inadequacies in the defense."  *U.S. v. Lawrence*, 735 F.3d 385, 435 (6th Cir. 2013), *pet. for cert. filed* (U.S. July 1, 2014) (No. 14-5064).  The prosecutor in petitioner's case made a point of saying that the defense attorneys were gentlemen and that he was not maligning them as gentlemen.  He then pointed out that it was the defense attorneys' arguments which he disagreed with because, in his opinion, the defense attorneys had ignored all the evidence in the case.  (Trial Tr. Vol. VIII, 188-89, Apr. 18, 2001.)   The prosecutor was "entitled to wide latitude in rebuttal argument and [to] fairly respond to arguments made by defense counsel."  *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982).   The court therefore finds that the prosecutor's argument did not amount to improper denigration of defense counsel.

### 4.  Appealing to the Jury's Sympathy

Next, petitioner claims that the prosecutor appealed to the jury's sympathy during closing arguments.  The disputed remarks read:

> [It] may be suggested to you during closing arguments by counsel
> that you should try to cleanse yourself of the emotion[s] that surround
> the death of Kevin Garland and Mary Ann Simmons.  That you
> should only pay attention to basically the Defendants in this case.
> I'm going to ask you to disregard that notion.  Because the way that
> they died was the result of their conduct.  So that's a polite way of
> saying cleanse yourself of the emotions that surround their death.
> That's a polite way of saying forget about them, pay attention to the
> people that are in front of you.  I'm going to ask that you not do that.

(Trial Tr. Vol. VIII, 76-77, Apr. 18, 2001.)

In addition, during his rebuttal argument, the prosecutor stated that the victims of crime deserve a fair trial and when the evidence shows guilt beyond a reasonable doubt, the defendants deserve a verdict of guilty.  (*Id.* at 202.)  The prosecutor concluded his remarks by noting that the jurors had taken an oath to deliver a true and just verdict and that there was only one verdict consistent with that oath and that was guilty as charged.  (*Id.* at 202-03.)

Prosecutors may not mislead juries or "ignite strong sympathetic passions for the victims and against [the defendant]."  *U.S. v. Payne*, 2 F.3d 706, 712 (6th Cir. 1993).  Such arguments can "invoke emotions which may cloud the jury's determination of [the defendant's] guilt."  *Id*.  However, when isolated remarks are made during a long trial and the trial court gives an appropriate cautionary instruction designed to overcome or to dissipate any prejudice caused by the remarks, the error can be harmless.  *Id*. (quoting *U.S. v. Leon*, 534 F.2d  667, 679 (6th Cir. 1976)).  Petitioner had a lengthy trial and the trial court charged the jurors not to let sympathy influence their decision, but to render a verdict based only on the evidence, which consisted of the trial testimony and exhibits.  (Trial Tr. Vol. IX, 5 and 7, Apr. 19, 2001.)  Further, as the Michigan Court of Appeals pointed out, "the prosecutor was arguing that the jury should consider all the evidence in this case."  *Landers*, 2004 WL 1089500, at *3.  This Court concludes

20

that the prosecutor's remarks were not an unfair appeal to the jury's sympathy or emotions.

### 5. Testifying to Facts Not in Evidence

In his fourth and final claim about the prosecutor, petitioner alleges that the prosecutor argued facts not in evidence when he stated in his rebuttal argument: "Whoever killed Mary Ann Simmons and Kevin Garland was really angry." (Trial Tr. Vol. VIII, 194, Apr. 18, 2001.) Petitioner also blames the prosecutor for suggesting that petitioner knew who shot him and that petitioner lied to the police and medical professionals when he stated that he did not know who shot him. (*Id.* at 57 and 85). Lastly, petitioner takes issue with the prosecutor's comment that people can die when "big" money is involved. (*Id.* at 79-80). Petitioner asserts that the prosecutor made all these statements to inflame the jury.

Prosecutors may not misrepresent the facts or assert facts never admitted in evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). Nor may they incite the passions and prejudices of the jury by calling on the jury's emotions and fears, rather than the evidence, to decide the case. *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). But the challenged remarks here were either tied to evidence that had already been introduced or were reasonable inferences from the evidence. As such, they were not improper. *See Lawrence*, 735 F.3d at 435; *Wogenstahl v. Mitchell*, 668 F.3d 307, 331 (6th Cir.), *cert. denied sub nom Wogenstahl v. Robinson*, 133 S. Ct. 311 (2012).

### 6. Summary

The prosecutor's conduct and remarks were proper and not so pronounced or persistent as to infect the entire trial with unfairness and violate petitioner's right to due process. Moreover, the trial court instructed the jurors that the attorneys' arguments were not evidence, but

were meant to help them understand the evidence and each side's legal theories. (Trial Tr. Vol. IX, 8, Apr. 19, 2001.) A trial court generally can correct improprieties in a prosecutor's closing argument "by instructing the jury that closing arguments are not evidence." *U.S. v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011). Petitioner therefore is not entitled to habeas relief on the basis of his prosecutorial misconduct claim.

### C. The Limitations Placed on Cross-Examination of Ronney Johnson
(habeas claims III and VI)

Petitioner alleges that the trial court violated his right of confrontation and right to present a defense by limiting his cross-examination of Ronney Johnson, who was the main witness to link petitioner to the murders. Petitioner contends that the limits placed on the defense attorneys' cross-examination of Johnson prevented him from showing that Johnson was involved in fraudulent car transactions, that he had money to buy expensive things, and that he was not being truthful at trial when he claimed to be dependent on Jackson for financial support.

The Michigan Court of Appeals disagreed with petitioner on this issue. It opined that the trial court permitted inquiry into relevant matters affecting Johnson's credibility and did not abuse its discretion by limiting inquiry into other matters.

### 1. Clearly Established Federal Law

Defendants in criminal prosecutions are entitled to cross-examine the witnesses against them, *see Pointer v. Texas* 380 U.S. 400, 404 (1965), and "to present a complete defense," *California v. Trombetta*, 467 U.S. 479, 485 (1984). But "[a] defendant's right to present relevant evidence is not unlimited . . . ." *U.S. v. Scheffer*, 523 U.S. 303, 308 (1998). It "is subject to reasonable restrictions." *Id.* "[T]he Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or]

22

confusion of the issues." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (internal quotation marks and end citations omitted). "This court's duty 'is not to determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" *Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir. 2002) (quoting *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)).

### 2.  Application

The record before the Court demonstrates that petitioner had an ample opportunity to cross-examine Johnson at trial.   A trial judge has great latitude to limit the extent of cross-examination. *See Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989). The test "is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Id*. To show that a judge has exceeded the lawful limits of his discretion,

> the litigant must show that the exclusion of testimony was 'arbitrary or disproportionate' to its purposes.  [*Michigan v. Lucas*, 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L. Ed. 2d 205 (1991)] (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)); *see also United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998.  All that is required in other words is that any limitation on cross-examination be reasonable.

*Batey v. Haas*, 573 F. App'x 590, 594 (6th Cir. 2014).

The prosecutor established on direct examination of Ronney Johnson that Johnson lied or omitted information in his four statements to the police. *See, e.g.,*, Trial Tr. II, 126-27, 133-

34, 138-39, Apr. 10, 2001.[3]  The prosecutor also elicited Johnson's testimony that the weapons charge against him was dismissed in exchange for his testimony in the murder case against petitioner and Jackson.  (*Id*. at 142.)

The defense attorneys subsequently spent hours cross-examining Ronney Johnson. The cross-examination began on April 10, 2001, continued all day on April 11, 2001, and concluded on April 12, 2001.  The total cross-examination and re-cross examination covers 430 pages of transcript.  Defense counsel for Jackson elicited Johnson's admission that Johnson not only lied to the police, but he also lied at the defendants' preliminary examinations (Trial Tr. Vol. II, 149-50, Apr. 10, 2001) and at the previous trial (Trial Tr. Vol. III, 75, Apr. 11, 2001).  Johnson also admitted on cross-examination that he was a felon (Trial Tr. Vol. III, 160, Apr. 11, 2001) and that he had been jail for a drug crime (Trial Tr. Vol. II, 196, Apr. 10, 2001).

The defense attorneys were not permitted to inquire about (1) the karat weight of a necklace Johnson was wearing in a photograph which was shown to him, (2) the financing of a car he sold to petitioner, (3) an automobile inspection report and insurance payment form used in the purchase of the car, (4) Johnson's jewelry, gold, and diamonds, and (5) his failure to file a federal income tax return.  The trial court ruled that the karat weight of Johnson's necklace pertained to a collateral matter and was irrelevant (Trial Tr. Vol. III, 123-25, Apr. 11, 2001); that the allegedly fraudulent financing agreement was a "bad act," which could not be used for impeachment purposes (*id*. at 149-50); that the automobile inspection report and insurance payment form also were inadmissible because they were "bad acts," which did not result in a conviction (*id*. at 166-70); and

---

[3]  A police officer also testified that Johnson lied in all four of his statements to the police.  (Trial. Tr. Vol. VII, 100-01, Apr. 17, 2001.)

that the jewelry, gold, and diamonds and the failure to file a federal income tax form were not

relevant issues (Trial Tr. Vol. IV, 28-29, April 12, 2001).

Defense counsel argued that the matters were relevant to Johnson's credibility, but

the Michigan Court of Appeals stated on direct appeal that Michigan Rule of Evidence 608(b)

prohibits the use of extrinsic evidence to attack a witness's credibility.   The Court of Appeals also

noted that, contrary to what petitioner alleged,

> the trial court permitted inquiry into relevant matters affecting
> Johnson's credibility, allowing defense counsel to elicit testimony
> that Johnson repeatedly lied, sold drugs, and spent time in prison, and
> that he earned enough money to support his family, purchase luxury
> items, and drive a BMW, even though he did not report any income.

*Landers*, 2004 WL 1089500, at *4.

The jury had more than enough information to assess Johnson's credibility.

Consequently, petitioner's right of confrontation was not violated by the minor restrictions placed

on the defense attorneys' cross-examination of Johnson.

> ### D.     The Videotape and Transcript of Ronney Johnson's Arraignment
> (habeas claim IV)

Petitioner alleges next that the trial court committed reversible error by admitting in

evidence a videotape and transcript of Ronney Johnson's arraignment in state district court on the

charge of carrying a concealed weapon.    During the arraignment, attorney Clarence Tucker

appeared in Johnson's behalf and stated that Johnson's family and attorney Angela Wallace had

retained him to represent Johnson.  *See* Pet. for Writ of Habeas Corpus, Ex. F, Video Arraignment

of Ronney L. Johnson, pp. 3-4.  Petitioner alleges that the videotape and transcript were irrelevant

and cumulative to Johnson's trial testimony.   Petitioner further alleges that the prosecutor's

comment at the  arraignment – that Johnson did not want Tucker to represent him – was testimonial

and violated his right to confront the prosecutor.

Petitioner's trial attorney objected to the playing of the videotape at trial, but the trial court ruled that the evidence was admissible. The trial court stated that the videotape was admissible because Johnson had given inconsistent testimony at petitioner's trial as to whether he was represented by an attorney at his arraignment. (Trial Tr. Vol. IV, 64-79, Apr. 12, 2001.)

The trial court addressed the issue again on state collateral review and stated that there was no merit in the claim because the evidence was relevant and admissible. The trial court also stated that any error in the prosecutor's comment about Johnson was harmless error.

The contention that the trial court abused its discretion by admitting irrelevant evidence is not a basis for habeas corpus relief because "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70).

It was not fundamentally unfair to admit Johnson's videotaped arraignment in evidence because the evidence clarified an apparent inconsistency in Johnson's trial testimony. On redirect examination by the prosecutor, he testified that a male attorney appeared at his arraignment and tried to represent him, but that he did not accept the attorney's representation and that the district court appointed an attorney for him. (Trial Tr. Vol. IV, 46-47, Apr. 12, 2001.) On re-cross examination, Johnson stated that he did not have an attorney at his arraignment and that the court

26

appointed a female attorney to represent him after he arrived in court.  (*Id.* at 60-61.) The videotape demonstrated that attorney Clarence Tucker, in fact, appeared on Johnson's behalf at the request of Angela Wallace and Johnson's family.  This evidence, in turn, was probative of the issue of whether Christine Jackson hired Angela Wallace to represent Johnson and whether Wallace hired a local attorney to represent Johnson at the arraignment to keep Johnson from saying anything about the murders of Kevin Garland and Mary Ann Simmons.  Thus, petitioner's claim that the trial court committed reversible error by admitting the evidence has no merit.

Petitioner's challenge to the prosecutor's comment at the arraignment – that Johnson did not wish to be represented by the attorney who appeared in his behalf – also lacks merit.  Petitioner claims that the prosecutor's remark violated his right of confrontation because he could not cross-examine him about the remark.  However, a lawyer's comments during a court proceeding are not "testimonial evidence" covered by the Confrontation Clause.  *U.S. v. Taylor*, 509 F.3d 839, 850 (7th Cir. 2007).  The state trial court, moreover, correctly determined on state collateral review that any error was harmless.  Johnson confirmed in the video that he did not want the attorney to represent him.  *See* Pet. for Writ of Habeas Corpus, Ex. F, at 4-5.  Consequently, any confrontation error caused by the prosecutor's comment could not have had a substantial and injurious effect or influence on the jury's verdict and was harmless.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

E.   **Hearsay**
     (habeas claims VII.B.2 and B.3 and XI)

Petitioner alleges that the trial court violated his right of confrontation by admitting hearsay testimony.  The hearsay consisted of statements made by Angela Wallace and the deceased victims.  The court has already addressed the issue of Angela Wallace's testimony at the California hearing.  *See infra*, section III.A.

27

The other hearsay consisted of Angela Wallace's remark to Ronney Johnson's mother and the victims' comments to Kelvin Garland. Kelvin testified that his deceased brother Kevin had said Christine and "T" (petitioner's nickname) brought drugs to Michigan from California. Kelvin also testified that Mary Ann Simmons had said she assisted in distributing twenty-five or more kilos of cocaine that "Chris" and "T" brought to the Detroit area. (Trial Tr. VII, 51-52, 55-56, Apr. 17, 2001.)

Ronney Johnson testified about an unrelated matter. He claimed that Angela Wallace had approached his mother, given his mother a card, told his mother to contact Wallace about the case, and said that Johnson was in "big trouble." (Trial Tr. Vol. IV, 41, Apr. 12, 2001.)

Petitioner raised his hearsay claim on direct appeal and in his motion for relief from judgment. The Michigan Court of Appeals determined that petitioner did not preserve his claim about the statements made to Kelvin Garland. The Court of Appeals nevertheless determined that plain error did not occur because Kelvin's testimony regarding the statements made to him by his brother Kevin and by Simmons did not change the outcome of petitioner's trial. The Court of Appeals also determined that the statements were not "testimonial" and, therefore, not barred by the Confrontation Clause.

A violation of the Michigan Rules of Evidence on hearsay would not be a basis for habeas corpus relief. *See Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). Further, the Confrontation Clause applies only to testimonial hearsay. *See Davis v. Washington*, 547 U.S. 813, 823-24 (2006). Petitioner's argument under the Confrontation Clause fails because the victims' comments to Kelvin Garland and Angela Wallace's remarks to Ronney Johnson's mother were not testimonial. They were comments to a relative, friend, or acquaintance, as opposed to statements

28

made during a police interrogation or testimony given at a preliminary hearing, former trial, or grand jury proceeding. Statements to a friend, confidant, companion, or acquaintance are not testimonial within the meaning of the Confrontation Clause. *See Crawford*, 541 U.S. at 51; *U.S. v. Franklin*, 415 F.3d 537, 545 (6th Cir 2005); *U.S. v. McCullough*, 150 F. App'x 507, 509 (6th Cir. 2005). Thus, petitioner's hearsay claim lacks merit.

### F. Trial Counsel
(habeas claim IX)

Petitioner alleges that he was denied his right to effective assistance of trial counsel. Specifically, petitioner contends that his trial attorney did not ask for discovery materiels, failed to read the transcript of petitioner's first trial, made no pretrial effort to have his trial severed from Jackson's trial, failed to investigate a tape of a collect call that Kevin Garland made to his brother while in jail, and failed to obtain the transcript of Angela Wallace's testimony in the California hearing before petitioner's trial commenced.

Petitioner raised his claim about trial counsel in his motion for relief from judgment. The state trial court rejected each of petitioner's arguments about defense counsel and concluded that there was no basis for the claim.

### 1. Clearly Established Federal Law

To prevail on his claim, petitioner must show that his attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

The "prejudice" prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

### 2. Application

Petitioner implies that his trial attorney was unprepared, but the trial transcript indicates otherwise. The attorney gave a good opening statement and closing argument, made appropriate objections, and thoroughly cross-examined the prosecution witnesses. There was no need to file a pretrial motion to sever the cases because the two defendants had the same defense, and when the issue of Wallace's prior testimony became an issue at trial, defense counsel asked for severance. Defense counsel could not have obtained the transcript of Wallace's prior testimony before petitioner's trial because the transcript was not discovered until mid-trial. Further, any deficiencies in defense counsel's handling of the issue of Wallace's prior testimony could not have prejudiced petitioner because the trial court admitted the evidence in Jackson's case only and for the limited purpose of impeaching Wallace's prior testimony.

Petitioner asserts that his attorney should have investigated a tape recording of Kevin Garland's collect call from jail to his brother Kelvin, but the trial court opined on post-conviction review that there was no indication the tape would be relevant. To his credit, defense counsel elicited testimony from Kelvin that his brother Kevin feared Mike McConico and thought that

McConico might try to kill him.  (Trial Tr. Vol. VII, 63, Apr. 17, 2001.)  This testimony suggested that someone other than petitioner might be responsible for Kevin's death.  As for the alleged failure to seek additional discovery materials and read the transcript of petitioner's first trial, petitioner has not shown how he was prejudiced by his attorney's omissions.

Petitioner has failed to show that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  Petitioner therefore has no right to relief on the basis of his ineffective assistance claim.

### G.  Cumulative Effect of Errors
(habeas claim X)

Petitioner claims that the combined effect of the many trial errors and trial counsel's ineffectiveness deprived him of due process and a fair trial.  No state court addressed this claim on the merits.  This court nevertheless rejects the claim because it is not a cognizable claim on habeas corpus review.  *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied sub nom Sheppard v. Robinson*, __ U.S. __, 132 S. Ct. 2751 (2012).

## IV.  Conclusion

The state courts adjudicated most of petitioner's claims on the merits and reasonably decided the issues.  Their decisions were not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts.  As for the claims that the state courts did not decide on the merits, those claims are meritless.  Accordingly, the amended petition for a writ of habeas corpus is denied.

## V. Denial of a Certificate of Appealability

Before petitioner may appeal this court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue

31

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  When, as here, a district court has rejected the constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. at 484.

Reasonable jurists would not find the court's assessment of petitioner's claims debatable or wrong, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore declines to grant a certificate of appealability.  Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this decision, because an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(3)(A).

_s/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  December 29, 2014